## GORDON BARKER V. THE STATE.

See this case as to objections to an indictment on account of irregularities in keeping the jury book, and drawing juries.

The license of billiard tables was evidently intended only to legalize the game of billiards proper, in the popular and commonly received acceptation of that term ; in which sense, we must suppose the Legislature to have employed language. It was not intended and can with no propriety be held to authorize games, other than that for which the table is commonly understood to have been designed. Its protection can, by no reasonable or just construction, be held to extend to gaming, under any name or description whatever, or to games devised and played for the purpose of gaming, though they may be known to a certain class, adepts, as a " species" or as included under some one of the "several kinds and varieties of billiards."

Appeal from Harrison. At the Fall Term, 1851, of the District Court of Harrison County, the grand jury presented a bill of indictment against the appellant, charging him as follows : " That Gordon Barker, late of the county of Harrison, " laborer, on the eighteenth day of December, in the year of " our Lord one thousand eight hundred and fifty-one, in the " county of Harrison, did bet money at a certain gaming ta- " ble, which said gaming table was then and there commonly " known as and called a rondo table, and that then and there " the game of rondo, on the said gaming table, called a rondo " table, was then and there played, and that the said Gordon " Barker, then and there at the said gaming table, called a " rondo table, did bet money on the event of said game of " rondo, contrary to the form of the statute," &c.

The appellant moved to quash the indictment on the following grounds: 1st. " The indictment charges no offence. The " supposed gaming table is not described by its proper name, " by averments direct and positive." 2nd. The grand jury " was improperly constructed in this : The County Court " failed to revise or make a new list in the jury book, for the " year 1851: The jury were drawn from the list of 1850, and

" by Deputy Clerks of the District and County Courts : The
" Clerk of the County Court did not, together with the Clerk
" of the District Court. and a Justice of the Peace, certify to
" the draft of jurors in the jury book: The District Clerk did
" not ceritify to the draft in the minutes of the District
" Court."

The certificate of drawing of the jury, entered in the jury
book, purported to have been made by the Clerks of the Dis-
trict and County Courts and a Justice of the Peace, the names
of the Clerks being signed by their Deputies. The certificate,
entered in the minutes of the District Court, purported to be
made by the District and County Clerks and Justice of the
Peace, but the name of the District Clerk was signed by his
Deputy. This motion was overruled.

The facts alleged in the indictment were proved.

A witness for the defendant gave a long account of the va-
rious kinds of billiards ; stated that rondo was one of the va-
rieties of billiards, and that the game in this case was played
on a billiard table for which witness was paying a license at
the time.

The Court charged the jury: " The defendant is charged in
" the indictment with betting money at a gaming table, com-
" monly called a rondo table, at a game commonly called
" rondo. This being denied by the defendant's plea of not
" guilty, the simple question, and the only one, for the jury
" to determine, is, did the defendant bet money on a game
" commonly called rondo, played on a gaming table called a
" rondo table, and was the betting in this county and within
" twelve months next before the finding of the indictment ; if
" so, then the defendant is guilty as charged.

" And if you are satisfied from the proof, that the defend-
" ant bet at a game of rondo, played on a billiard table, it is
" in the eye of the law a rondo table for the time being, and
" for the purposes of this trial.

" And if the proof shows you that the game was played by
" rolling eight balls a size less than a billiard ball, simultane-

" ously, with the hand, diagonally across the billiard table to
" a pocket in the corner of the billiard table, and if an even
" number of balls fell in the pocket, it was called rondo, and
" if an odd number of balls fell in the pocket, it was called
" coolo, then I say the authorities on gaming do not denomi-
" nate it as any of the varieties of billiard games, and you will
" find defendant guilty."

The defendant asked the Court to charge the jury:

1st. That under the indictment for betting at a rondo table,
to authorize the jury to convict the defendant, they must be-
lieve from the evidence that rondo was and is a gaming table,
kept, exhibited or carried on by some one for gaming.

2nd. That to constitute a table, or a gaming table or bank,
such table must be used by some one holding a bank or banks
for the purpose of inviting or receiving betters thereto, or kept,
exhibited or carried on by some one for the purpose of gaming.

3rd. That unless the jury believe from the evidence, that
defendant bet upon such gaming table or bank, they will ac-
quit the defendant.

4th. That the term billiards is not a specific term, but a
general term including several kinds or varieties.

5th. That if rondo is a species or one of the varieties of bil-
liards, the jury will acquit the defendant.

6th. That if the jury have a reasonable doubt whether the
defendant bet, or whether rondo is a gaming table or bank, or
whether it is one of the varieties of billiards, they will acquit
the defendant.

7th. To sustain the charge in the indictment for betting
money, it must appear by the proof that defendant bet gold or
silver; and if not so proven the jury must acquit the defendant.

These charges were all refused.

The defendant was convicted of the offence charged, and
appealed.

*Attorney General*, for appellee.

WHEELER, J. The only question presented by the record

is this case, which is not disposed of in the case of Vanhook v. The State, (*supra*) relates to the ruling of the Court in giving and refusing instructions.

It is unnecessary to review the general charge of the Court. It is not perceived that it contains any proposition or doctrine of which the defendant can complain ; or which was not fully warranted by the case of Estes v. The State. (10 Tex. R. 300.) Nor is it material to notice the several propositions embraced in the instructions asked by counsel for the defendant and refused. They were either but the repetition of what the Court had already given in charge to the jury ; or were wholly impertinent to the true issues of law and fact, to which it was the duty of the jury to respond, and, of course, to confine their investigation ; and they were very properly refused as calculated to mislead the jury as to the law and their duty. Of this character were the following propositions, which it may suffice to notice, viz: " That the term billiards is not a speci- " fic term, but a general term including several kinds or va- " rieties:" And, " that if rondo is a species, or one of the va- " rieties of the billiards, the jury will acquit the defendant."

In licensing the keeping of billiard tables, the Legislature did not intend to license gaming of any kind or description, under the name of billiards. Gaming is denounced by the law as an offence against public policy, (Hart. Dig. p. 212,) as tending to promote idleness, vice and immorality ; and in an old authority, it is said to be " clearly agreed" that, independently of being prohibited by the statute of 33 Hen. 8, c. 9, Sec. 11, gaming houses " are nuisances in the eyes of the law, " being detrimental to the public, as they promote cheating, and " other corrupt practices, and entice numbers of persons to " idleness, whose time might be otherwise employed for the " good of the community." (1 Hawk, c. 75, Sec. 6.) Those who frequent them are described as " idle and evil disposed persons," and their keepers were indictable at Common Law. (1 B. & C., 272.) There is nothing in our laws which would warrant the supposition that they have been regarded by our

legislators in a more favorable light. It could not have been intended by the licensing of billiard tables, thereby to legalize gaming, and the keeping of common gaming houses, so odious in the eyes of the law, which would be the consequence; when gaming and the keeping of gaming houses are denounced by the statute concerning crimes, as offences against public policy; and are prohibited under a penalty, and punishable by indictment. The license was evidently intended only to legalize the game of billiards proper, in the popular and commonly received acceptation of that term, in which sense, we must suppose the Legislature to have employed language. It was not intended, and can with no propriety be held to authorize games, other than that for which the table is commonly and properly understood to have been designed. Its protection can, by no reasonable or just consideration, be held to extend to gaming, under any name or description whatever; or to games, devised and played for the purpose of gaming, though they may be known to a certain class, adepts, as a "species," or as included under some one of the "several kinds or varieties" of billiards. General legislation is intended for the benefit of the many; not for the advantage of a few. On this subject it is intended to protect the many by punishing the few, whose practices are supposed to be inimical to the peace, order and good morals of society. Terms are employed in their commonly received acceptation, for the laws are intended to be generally understood. They are not to be intended to have been written in characters, unintelligible, except to the initiated, or to have been designedly placed beyond the reach and comprehension of the many, to enable the few, possessed of a greater familiarity with "mischievous devices," the more effectually to ensnare them and elude detection and punishment. It is not to be supposed that the Legislature were acquainted with the *arcana* of gaming, or that they employed words to be understood only by those possessing an intimate acquaintance with that subject. I am not aware that it is claimed for gaming that it is entitled to be classed among

the learned sciences or professions.  But if it is entitled to that rank, the laws for its suppression were not framed in reference to its hidden mysteries ; nor are they to be administered by those who are supposed to be cognizant of them, or who will be obliged to become so, in order to the proper discharge of their duties.  They constitute no part of either the common or statute law of the country.  And in the trial of persons indicted for offences of the character of the present, there is no legal necessity to institute inquiries into the " essential principles," or the peculiar distinctive character of the different kinds or " varieties" of gaming.  Nor are the Courts required, by any consideration of legal duty, or of propriety, to have witnesses testify on that subject.  Such knowledge, fortunately, is not essential to the proper understanding and due administration of the criminal law.  The inquiry, in this case, was, not what was the proper name or legitimate uses of the table employed for the playing, or whether the game played was known to a witness, who may have officiated on that particular occasion, to disclose his intimate acquaintance with, and superior knowledge of the subject, to enlighten the Court and jury in regard to their duty, as some one of the several " varieties of billiards ; but the inquiry was, whether it was billiards, in the common understanding of the meaning of that term.  And the Court very properly instructed the jury that, as exhibited by the evidence, rondo was not billiards ; and that the billiard table thus employed for gaming, was perverted from its legitimate uses ; and was, in the eye of the law, for the time, and for the purposes of the trial, to be regarded as a rondo table.  (Estes v. The State, 10 Tex. R. 308.)   The evidence abundantly showed that the game played was not billiards in a legal sense ; that is, the commonly received sense, in which alone it is known to the law.   There could be no pretence, therefore, that it was the game protected by the license.   And the instructions asked were calculated, if not designed to mislead ; and were, for that reason, very properly refused.   The judgment is affirmed.

Judgment affirmed.